1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan Shub (CA Bar # 237708)
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Ph: (215) 238-1700
Email: jshub@kohnswift.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ANNE GOBER, DAVID WORMWOOD, AARON CORNEAIL, CHARLES WEYGANT, DEBORAH DURDA, JOEL DARBY, AND BRYON ZABLOTNY individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BEHR PROCESS CORP.; BEHR PAINT CORP.; MASCO CORP.; THE HOME DEPOT, INC.; and HOME DEPOT U.S.A., INC., <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Anne Gober, David Wormwood, Aaron Corneail, Charles Weygant, Deborah Durda, Joel Darby, and Bryon Zablotny individually and on behalf of all others similarly situated, by and through undersigned counsel, allege as follows:

## NATURE OF CASE

1.      Millions of Americans have wooden decks and concrete surfaces outside their homes.  The surfaces require periodic maintenance not only to maximize their useful life, but also to keep up their appearance.  Traditionally, homeowners apply paints or stains on their decks and patios to provide a decorative and protective barrier from the elements and to minimize wear and tear.

2.      In 2013, Behr, through a national marketing campaign, released a new patio and deck product exclusively through Home Depot, branded as DeckOver.  Behr and Home Depot represented to homeowners that DeckOver was worth its premium price (3-5 times more expensive than ordinary paints and stains) because it was a more durable coating (5 times thicker) and it could repair decks by filling in cracks and stopping splinters.

3.      But DeckOver is not durable or long-lasting.  Instead, within mere months of application, DeckOver begins to flake, peel, and separate from deck and concrete surfaces.  Thus, rather than providing homeowners with a premium option for reducing maintenance work and improving the look and performance of their patios and decks, DeckOver performs worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it (with some homeowners resorting to replacing their decks entirely).

4.      Plaintiffs bring this class action suit on their own behalf and on behalf of others similarly situated under California, Pennsylvania, Maine, Michigan, Minnesota, Ohio, New Mexico, and New York consumer protection laws.  Plaintiffs seek an order forcing Behr and Home Depot to stop their deceptive conduct and to provide appropriate remuneration to affected consumers.

1

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

5.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Behr Process Corporation and Behr Paint Corporation.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district.  Defendants Behr Process Corporation and Behr Paint Corporation are California corporations with their principal places of business in this District.

**PARTIES**

7.     Plaintiff Anne Gober is a resident and citizen of the State of Pennsylvania.

8.     Plaintiff David Wormwood is a resident and citizen of the State of Maine.

9.     Plaintiff Aaron Corneail is a resident and citizen of the State of Michigan.

10.     Plaintiff Charles Weygant is a resident and citizen of the State of Minnesota.

11.     Plaintiff Deborah Durda is a resident and citizen of the State of Ohio.

12.     Plaintiff Joel Darby is a resident and citizen of the State of New Mexico.

13.     Plaintiff Bryon Zablotny is a resident and citizen of the State of New York.

14.     Defendants Behr Process Corporation and Behr Paint Corporation are California corporations, with their principal place of business in California.  Both Behr Process Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana, California, 92704.

2

CLASS ACTION COMPLAINT

15.     Defendant Masco Corporation is a Delaware corporation, with its principal place of business in Michigan.  Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180.  Masco acquired Behr Process Corporation in 1999.  Masco conducts Behr-oriented marketing and sales operations in Santa Ana, California.  Plaintiffs refer to Behr Process Corporation, Behr Paint Corporation, and Masco Corporation collectively as "Behr."

16.     Defendant The Home Depot, Inc. is a Delaware corporation, with its principal place of business in Georgia.  The Home Depot, Inc. is the parent company of Home Depot U.S.A., Inc. and describes itself in annual reports filed with the Securities Exchange Commission as the world's largest home improvement retailer.

17.     Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its principal place of business in Georgia.  Home Depot U.S.A. operates as a subsidiary of The Home Depot, Inc.

## COMMON FACTUAL ALLEGATIONS

### I.     Deck and Patio Restoration

18.     Wooden decks and concrete surfaces are prone to wear and deterioration through exposure to the elements, which leads to scuffing, decay, cracking, and splinters.  Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their appearance.

19.     One way to maintain the surfaces is through application of coatings.  Coatings include paints and stains that provide a thin decorative and protective barrier (with the stains actually soaking into the fibers themselves).  Although paints and stains provide some surface protection, they typically do not improve the surfaces' condition (for example, by fixing cracks or splinters).  Paints also need to be reapplied relatively often to maintain their cosmetic and protective benefits.

20.     An alternative coating, which is the focus of this case, is a relatively recent introduction to the marketplace: a protective, restorative coating, known as a resurfacer.  Resurfacers are also painted onto surfaces and are typically marketed as

3

providing substantially more benefits (at a greater cost) than paints and stains. Resurfacers are supposed to provide an attractive appearance akin to what a paint or stain would provide, but better preserve the surface by coating it in a significantly thicker protective barrier.  The thicker coating provides the added benefit of filling in large cracks and encapsulating splinters.  Resurfacers are designed and expected to last significantly longer than paints and stains, eliminating the need for regular maintenance while at the same time substantially extending the life of wood and concrete surfaces.

21.    Because of their expected added benefits, resurfacers typically cost substantially more than paints and stains.  A consumer who spends the extra money to buy a resurfacer may be able to avoid replacing a deck or will have to devote less time and money to maintaining the deck in the years that follow.

## II.    Behr DeckOver

22.    Behr manufactures a line of deck resurfacers: "Behr's Premium DeckOver."  Behr officially introduced its Premium DeckOver product in the spring of 2013, claiming in a press release that DeckOver was an "advanced formula" that "revitalize[s] tired decks, patios, porches and even pool decks, and provides a budget-friendly unique solution that was previously unavailable to consumers."  According to Scott Richards, Senior Vice President of Marketing at Behr Process Corporation, this product line was the culmination of "years of research and the latest technology."

23.    Richards described "easy application and durable protection against the elements, . . . allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces."  About a year later, Behr introduced a Textured DeckOver product.  DeckOver is sold exclusively at Home Depot, both online and at retail locations.

CLASS ACTION COMPLAINT

### III.    Defendants' Marketing Campaign

24.    Since DeckOver was introduced, both Behr and Home Depot have marketed it as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces.

25.    For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains."

26.    Similar representations appear on the product's packaging:



CLASS ACTION COMPLAINT

The label states that DeckOver "Brings new life to old wood & concrete"; "Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish"; and Conceals Splinters & Cracks up to ¼"."



The label also represents:

- "Resists Cracking & Peeling";
- "Durable, Mildew Resistant Finish";

- "Waterproofing, Solid Color Coating";
- "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";
- Great for Concrete Pool Decks, Patios & Sidewalks"; and
- "Interior/Exterior, 100% Acrylic Formula."

27.   Behr also airs television commercials advertising DeckOver.  The DeckOver television commercials emphasize the same themes as can be found on DeckOver labeling and in-store displays: the ads feature people standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

28.   Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr.  A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore."  In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)."  Behr also states on Home Depot's website that DeckOver "can be expected to last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces."

29.   Home Depot markets DeckOver in a virtually identical manner as Behr. On its website, Home Depot emphasizes the durability and restorative effects of DeckOver, claiming it "will bring your old, weathered wood or concrete back to life," that it will "create[] a durable coating on your tired deck, rejuvenating its look," and that it will "[b]ring new life to old, uninviting wood" and make your surfaces "like new," with a "refreshed look."  Home Depot, like Behr, emphasizes that DeckOver "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," and is

CLASS ACTION COMPLAINT

"waterproof[]," providing a "mildew resistant finish." In-store displays at Home Depot tout DeckOver's "long-lasting durability."

30. Behr and Home Depot use these representations to charge more for DeckOver. Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints and stains and that it is an alternative to deck replacement (which is several times more expensive). DeckOver, compared to Behr and other companies' paints and stains, covers 3-5 times less area and yet is more expensive per gallon:

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|------|--------------|---------------------|-----------------|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat 500-600 sq. ft. second coat | $27 |
| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

## IV.    As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers.

31. DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time. It routinely peels, bubbles, and degrades within months of application.

32. Behr's website has received over 150 consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied. Several examples of these complaints are excerpted below:

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. … The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "Worst product ever!  Waste of money! . . . I bought the Behr Deckover product in order to redo my deck.  I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013.  It is now February 2014.  The product did not even last one year.the product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product.  I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

- "Peeled Badly . . . When I applied the Deck Over product, last summer, it looked beautiful.  But now that winter has ended it's peeling and looks horrible.  I've only had it down for 9 months and now I'm going to have to completely redo my deck.  What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with.  You need to offer total refunds at the very least.  There is no way to return the time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

- "In less than a year of putting this Deck over on our deck, I started to see some bubbling starting along the trim boards of the deck.  Not much longer and the whole deck showed signs of the bubbling and then complete peeling

9

. . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint.  Plus take the time to peel all the defective Behr Deck over paint and put another cleaner on the deck."—October 27, 2016

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off.  Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left.  Behr owes me 48 hours of my life back.  Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

33.    Home Depot has also received hundreds of DeckOver complaints through its website:

- "Doing my deck over . . . Don't buy this product.  I hope it holds up during the winter.  Otherwise I'll be doing my deck over in the spring.  It definitely will not be Behr's DeckOver or anything by Behr for that matter."—August 3, 2013

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted deck boards.  Deck over is peeling & bubbling all over my deck!  A disaster"—May 14, 2014

- "Worst product I have ever bought.  We used over 6 gallons for our large deck.  The sales person told us it would last 10 year.  We followed the instructions exactly and within SIX months it was peeling!  Not to mention it does not fill in cracks like promised."—June 3, 2015

CLASS ACTION COMPLAINT

- "Within 7 months this product will peal (sic) up. I have no idea why this product is still on the market. You will be scraping it off in a year. Don't waste your time or money on it."—June 6, 2016

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations. It did not do a good job of covering the concrete surface of our lanai."—March 5, 2017

- "I should've read the reviews before using this product. We actually paid a professional to apply it to our deck. They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood. It is starting to look terrible. What a waste of money!"—May 17, 2017

34.    It is common for manufacturers and sellers of consumer products to monitor media reports, internet forums, and other public reactions and treatment of their product. In May 2016, CBC News published an article entitled: "Behr Deckover subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry." The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014. But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling." He tried again the following year but got the same results.

35.    Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the internet. For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following:

- "I applied deckover last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent

CLASS ACTION COMPLAINT

well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

- "I spent a great deal of money painting two decks with this garbage. One year later it is peeling off everywhere . . . I now am having to replace several rotted boards, pay for pressure washing again and when cured, repainted. It will obviously cost me more to fix the problem than when I initially paid to have the deck painted, as I am sure a lot of scraping will also have to be done."—October 19, 2016

- "I had this product put on my deck last fall and it began to peel by spring. Now I have multiple places that the deck over has completely peeled off . . . It's a shame you pay hat [sic] much for a product that does not last one year."—December 30, 2016

36.    Behr also researched and tested DeckOver before beginning to sell it. Given how quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel, chip, bubble, and crack within months of application before introducing DeckOver to the market.

37.    After it went on the market, complaints were widespread and persistent: Defendants have received phone calls and emails complaining about DeckOver, and consumers have been uploading negative reviews of DeckOver on Behr's own website, Home Depot's own website, and elsewhere since summer 2013. Behr reviews the complaints on these websites and has responded to some of them. The complaints on these websites are not prominent. For example, Behr highlights on its DeckOver product page the "Latest Featured Reviews" which consists of four and five star reviews, but only through scrolling well down the page or clicking to a separate

CLASS ACTION COMPLAINT

webpage is it revealed that there are hundreds of negative reviews.  Likewise, the reviews on Defendants websites do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews.  In addition, there is at least one report by the media that Behr removed online complaints on its own Facebook page containing DeckOver complaints.

38.    Fixing the damage to one's deck that results from applying DeckOver is difficult and costly.  As the reviews above describe, DeckOver cracks, peels, bubbles, and chips, exposing the underlying surface to the elements.  All these forms of exposure both fail to protect wood from precipitation and trap water onto wooden boards underneath the DeckOver that remains, causing mildew and rot.  Repairing loose areas in patches does not solve these problems as other areas of DeckOver will inevitably loosen.  Full removal of DeckOver requires stripping the deck and reapplying a protective coating, which takes hours.  Given how costly it is to remove DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing their decks entirely.

39.    Yet Defendants continue to sell DeckOver, continue to market it as "durable," "long-lasting," and an alternative to replacing one's deck, and do not warn customers beforehand that the product fails after only a few months, often leaving the surface looking worse than before DeckOver was applied.

40.    As a result, consumers continue to spend hundreds of dollars purchasing and applying DeckOver, and spend time and money removing and replacing DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

## PLAINTIFF GOBER'S EXPERIENCE

41.    Plaintiff Anne Gober purchased one 5-gallon container of Behr DeckOver in August 2014, from a Home Depot store in Wilkes-Barre, Pennsylvania.  Ms. Gober had seen television advertisements for DeckOver.  Ms. Gober also reviewed the product label before buying DeckOver.

CLASS ACTION COMPLAINT

42.    Plaintiff Gober and her husband applied the DeckOver to the wood deck on their home, in August 2014.  They carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few days, the DeckOver began to leave stains on her deck.

43.    In August 2014, Ms. Gober called Behr and told them that DeckOver had left stains on her deck within a few days of application.  Behr offered to send her a free 5-gallon container of DeckOver.

44.    In the Fall of 2014, Ms. Gober and her husband re-applied the DeckOver. Within a few months of application, Ms. Gober noticed that her deck began to bubble, crack, and peel pull off the wood surface.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

45.    In or around June 2017, Ms. Gober replaced some of her decking boards that were severely cracked as a result of applying the DeckOver because the boards presented a safety hazard.

46.    Had Ms. Gober known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

47.    Ms. Gober continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

### PLAINTIFF WORMWOOD'S EXPERIENCE

48.    Plaintiff David Wormwood purchased approximately five or six 5-gallon containers of Behr DeckOver on July 11, 2014, from a Home Depot store in Topsham, Maine.  Mr. Wormwood had seen television advertisements for DeckOver.  Mr. Wormwood also reviewed the product label before buying DeckOver.

14

CLASS ACTION COMPLAINT

49.     Plaintiff Wormwood applied the DeckOver to two wood decks on his home, in September 2014.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel pull off the wood surfaces.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

50.     In December 2014, Mr. Wormwood called Behr and told them that DeckOver had cracked, bubbled, and peeled off his deck within a few months of application.  Behr's only offer was to send him free DeckOver.

51.     Had Mr. Wormwood known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

52.     Mr. Wormwood continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## PLAINITFF CORNEAIL'S EXPERIENCE

53.     Plaintiff Corneail purchased one 5-gallon container of Behr DeckOver in or around May 2016 from a Home Depot store in Michigan.  Mr. Corneail had seen advertisements for DeckOver in the Home Depot store.  Mr. Corneail also reviewed the product label before buying DeckOver.

54.     Mr. Corneail applied the DeckOver to his wood deck on his home in May 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel pull off the wood surfaces.

CLASS ACTION COMPLAINT

55.    Had Mr. Corneail known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

56.    Mr. Corneail continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## PLAINITFF WEYGANT'S EXPERIENCE

57.    Plaintiff Weygant purchased a container of Behr DeckOver in or around the summer of 2015 from a Home Depot store in Minnesota.  Mr. Weygant had seen advertisements for DeckOver in the Home Depot store.  Mr. Weygant also reviewed the product label before buying DeckOver.

58.    Mr. Weygant applied the DeckOver to his wood deck on his home in the summer of 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel pull off the wood surfaces.

59.    Had Mr. Weygant known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

60.    Mr. Weygant continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CLASS ACTION COMPLAINT

1

## **PLAINTIFF DURDA'S EXPERIENCE**

2       61.     Plaintiff Deborah Durda purchased two 5-gallon containers and

3   approximately two or three 1-gallon containers of Behr DeckOver in or around June

4   2014, from a Home Depot store in Avon, Ohio.  Ms. Durda had seen television

5   advertisements for DeckOver.  Ms. Durda also reviewed the product label before

6   buying DeckOver.

7       62.     Plaintiff Durda applied the DeckOver to one wood deck on her home, in

8   or around June 2014.  She carefully reviewed the application instructions on the label

9   prior to applying DeckOver, and applied the product as instructed.

10      63.     Within a few months, the DeckOver began to bubble, crack, peel and pull

11  off the wood surface.

12      64.     In or around September 2014, Ms. Durda contacted Behr and told them

13  that the DeckOver had cracked, bubbled, peeled and pulled off her deck within a few

14  months of application.  Behr's only response was to send her free DeckOver.

15      65.     In or around June 2015, Plaintiff Durda re-applied the DeckOver to the

16  wood deck on her home, and followed the application instructions provided by Behr.

17      66.     Within a short time, the DeckOver again began to bubble, crack, peel and

18  pull off the wood surface.  Soon after, the DeckOver was peeling off in large strips,

19  completely exposing the wood underneath.

20      67.     In or around March 2017, Ms. Durda contacted Behr and told them that

21  DeckOver had cracked, bubbled, peeled and pulled off her deck in large strips.  Behr's

22  only response was to tell her that she could remove the product from her deck.

23      68.     Ms. Durda attempted to remove the product as per the instruction of a

24  Behr representative, Kevin Sullivan.  However, Ms. Durda has been unable to remove

25  the product in an effective manner even after following Mr. Sullivan's instructions.

26      69.     Had Ms. Durda known that DeckOver was incapable of providing

27  durable surface coating, she would not have purchased or used the product.

28

70.    Ms. Durda continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a few months of application.

## PLAINTIFF DARBY'S EXPERIENCE

71.    Plaintiff Joel Darby purchased approximately one 5-gallon container and a 1-gallon container of Behr DeckOver on in September 2016, from a Home Depot store in Alamogordo, New Mexico.  Mr. Darby had seen television advertisements for DeckOver.  Mr. Darby also reviewed the product label before buying DeckOver.

72.    Plaintiff Darby applied the DeckOver to one wood deck on his home, in approximately October 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.

73.    Within a few months, the DeckOver began to bubble, crack, and peel pull off the wood surface.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

74.    In December 2016, Mr. Darby e-mailed Behr and told them that the DeckOver had cracked, bubbled, and peeled off his deck within a few months of application.  Behr never responded to Plaintiff Darby's e-mail.

75.    Had Mr. Darby known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

76.    Mr. Darby continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to

purchasing and overpaying for resurfacers like DeckOver which crack and peel within a few months of application.

## PLAINTIFF ZABLOTNY'S EXPERIENCE

77.    Plaintiff Zablotny purchased a container of Behr DeckOver in or around the summer of 2015 from a Home Depot store in New York.  Mr. Zablotny had seen advertisements for DeckOver in the Home Depot store.  Mr. Zablotny also reviewed the product label before buying DeckOver.

78.    Mr. Zablotny applied the DeckOver to his wood deck on his home in the summer of 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel pull off the wood surfaces.

79.    Had Mr. Zablotny known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

80.    Mr. Zablotny continues to own a home with a wooden surface outside and intends to continue to maintain that surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## CLASS ACTION ALLEGATIONS

81.    This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

82.    Plaintiffs seek to represent the following classes:

Nationwide Class:  All persons who purchased a Behr Premium DeckOver product in the United States.

Pennsylvania Class: All persons who purchased a Behr Premium DeckOver product in the state of Pennsylvania.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Maine Class**: All persons who purchased a Behr Premium DeckOver product in the state of Maine.

**Michigan Class**: All persons who purchased a Behr Premium DeckOver product in the state of Michigan.

**Minnesota Class**: All persons who purchased a Behr Premium DeckOver product in the state of Minnesota.

**Ohio Class**: All persons who purchased a Behr Premium DeckOver product in the state of Ohio.

**New Mexico Class**: All persons who purchased a Behr Premium DeckOver product in the state of New Mexico.

**New York Class**: All persons who purchased a Behr Premium DeckOver product in the state of New York.

83.    Excluded from both classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

84.    Plaintiffs and class members seek relief under Rule 23(b)(2).  The injunctive relief Plaintiffs and class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation.  Plaintiffs and class members also seek relief under Rule (b)(3) and/or (c)(4).

85.    **Numerosity**: Behr has manufactured, and Home Depot has sold, DeckOver to at least thousands of proposed class members.  Members of the proposed classes are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

86.    **Commonality and Predominance**: Common question of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.  These common questions include whether:

CLASS ACTION COMPLAINT

a.  Defendants marketed DeckOver as a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces;

b.  DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application;

c.  Defendants' marketing of DeckOver was false, deceptive, and misleading to reasonable consumers;

d.  Defendants knew DeckOver was not a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces and is instead susceptible to peeling, chipping, bubbling, and degrading within months of application;

e.  DeckOver's propensity to peel, chip, bubble, and generally degrade within months of application, rather than provide long-lasting protection for wood and concrete surfaces, would be important to a reasonable consumer;

f.  Defendants failed to disclose DeckOver's propensity for peeling, chipping, bubbling, and degrading within months of application; and

g.  Whether Defendants' conduct violates various state consumer protection statutes.

87.  **Typicality**: Plaintiffs' claims are typical of the claims of the proposed classes.  Plaintiffs and the members of the proposed classes all purchased DeckOver, giving rise to substantially the same claims.

88.  **Adequacy**: Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes he seeks to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

CLASS ACTION COMPLAINT

89.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

90.    In the alternative, the proposed classes may be certified because:

a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.    The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.    Defendants have acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

CLASS ACTION COMPLAINT

## CHOICE OF LAW ALLEGATIONS

91.     The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed nationwide class against Behr.

92.     Behr does substantial business in California.  Home Depot, where Behr products are sold, maintains over 200 locations in California.  Behr Process Corporation and Behr Paint Corporation are both headquartered in California, and Behr's promotional activities arise from conduct in the State of California.  Further, a significant portion of the proposed Nationwide Class is located in California.

93.     On the "Standard Sales Terms and Conditions" page of its website, Behr purports to require that the "sale of [Behr's] products" be "construed and interpreted, and the rights of the parties determined, in accordance with the laws of the State of California . . . ."

94.     In addition, the conduct that forms the basis for each and every class member's claims against Defendants emanated from Behr Process Corporation and Behr Paint Corporation's headquarters in Santa Ana, California.  Behr marketing executives are based in California, including Behr Process Corporation's Vice President of Digital Marketing, Masco's Coating Group's Vice President of Marketing Communications, and Behr's Marketing Director.

95.     The State of California also has the greatest interest in applying its law to class members' claims.  Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1064 (1999).

96.     If other states' laws were applied to class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and

CLASS ACTION COMPLAINT

deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like Behr Process Corporation or Behr Paint Corporation that does business throughout the United States if it can ensure that consumers from only one of the fifty states affected by conduct that runs afoul of its laws are compensated.

## TOLLING OF STATUTES OF LIMITATIONS

97.     <u>Discovery Rule</u>: Plaintiffs' and class members' claims accrued upon discovery that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. While Defendants knew, and concealed, these facts, Plaintiffs and class members could not and did not discover these facts through reasonable diligent investigation until after they experienced the aftermath of DeckOver application and learned that the problem was not isolated to their DeckOver.

98.     <u>Active Concealment Tolling</u>: Any statutes of limitations are tolled by Defendants' knowing and active concealment of the facts set forth above.  Defendants kept Plaintiffs and all class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery.  Plaintiffs could not have reasonably discovered these facts, nor that Defendants failed to disclose material facts concerning its performance.

99.     <u>Estoppel</u>: Defendants were and are under a continuous duty to disclose to Plaintiffs and all class members the true character, quality, and nature of DeckOver. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver.  The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members,

CLASS ACTION COMPLAINT

and await discovery.  Plaintiffs reasonably relied on Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

100.    Equitable Tolling: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance.  The details of Defendants' efforts are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery.  When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims.  Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CAUSES OF ACTION

### Count I

### Unlawful, Unfair, and Fraudulent Business Practices

### Cal. Bus. & Prof. Code § 17200, *et seq*.

### (On Behalf of the Nationwide Class Against the Behr Defendants)

101.    Plaintiffs re-allege the paragraphs above as if set forth fully herein.

102.    The Behr Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

103.    The Behr Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In particular, Behr manufactured and distributed DeckOver and authorized and marketed its sale to the public even though DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application.  The Behr Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise.

104.    The Behr Defendants' business acts and practices are unlawful in that they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, for the reasons set forth in this complaint.

105.    The Behr Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, the Behr Defendants knowingly misrepresent and conceal material facts related to DeckOver's performance.  Had the Behr Defendants not misrepresented and concealed these facts, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for them.

106.    The Behr Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.    The gravity of harm to Plaintiffs and the proposed class from the Behr Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.    The Behr Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the proposed nationwide class; and

c.    The Behr Defendants' conduct undermines and violates the stated policies underlying the Consumers Legal Remedies Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

107.    As a direct and proximate result of the Behr Defendants' business practices, Plaintiffs and proposed class members suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.  Plaintiffs and the proposed nationwide class are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to the Behr Defendants,

because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices.

## Count II

### Violation of California Consumers Legal Remedies Act

### Cal. Civ. Code § 1750, *et seq.*

### (On Behalf of the Nationwide Class Against the Behr Defendants)

108.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein.

109.    The Behr Defendants are each a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and have provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

110.    Plaintiffs and members of the proposed class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

111.    The Behr Defendants' acts and practices were intended to result and did result in the sale of DeckOver, and violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

> a.    The Behr Defendants represent DeckOver has characteristics, uses, and benefits which it does not have;
>
> b.    The Behr Defendants represent that DeckOver is of a particular standard, quality, and grade when it is not;
>
> c.    The Behr Defendants represent that transactions involving DeckOver conferred or involved rights, remedies, and obligations which they do not; and
>
> d.    The Behr Defendants represent that DeckOver has been supplied in accordance with a previous representation when it has not.

112.    As described above, the Behr Defendants manufactured, distributed, and marketed DeckOver for sale to class members while misrepresenting and concealing

CLASS ACTION COMPLAINT

material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading soon after application.

113.    Had the Behr Defendants not misrepresented and concealed material facts about DeckOver, Plaintiffs, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for DeckOver.

114.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs provided a letter to the Behr Defendants with notice of its alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices.  If the Behr Defendants do not thereafter correct their business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

115.    Pursuant to California Civil Code § 1780, Plaintiffs seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

**Count III**

**Unjust Enrichment**

**Based on California Common Law**

**(On Behalf of the Nationwide Class Against the Behr Defendants)**

116.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

117.    As described above, the Behr Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

118.    As a result of its fraudulent acts and omissions related to DeckOver, Behr obtained monies which rightfully belong to Plaintiffs and the proposed Nationwide

Class members to the detriment of Plaintiffs and the proposed Nationwide Class members.

119.   Behr appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Nationwide Class members, who, without knowledge that the DeckOver would not perform as advertised, paid a higher price for the product than it was worth.  Behr also received monies for DeckOver that Plaintiffs and the proposed Nationwide Class members would not have otherwise purchased.

120.   It would be inequitable and unjust for Behr to retain these wrongfully obtained profits.

121.   Behr's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

122.   Plaintiffs and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

## Count IV

### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (On Behalf of the Pennsylvania Class Against the Behr and Home Depot Defendants)

123.   Plaintiff and the Proposed Class Members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

124.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection with the sale or advertisement of any merchandise. 73 PS. § 201-1 *et seq.*

125.   Defendants engaged in unfair, unlawful, and deceptive acts in trade and commerce which have the capacity and tendency to deceive and did deceive Plaintiff and the Proposed Class members and damaged Plaintiff and the Proposed Class members.

CLASS ACTION COMPLAINT

126.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

127.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

128.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

129.   Defendants failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

130.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class members that the DeckOver was defective.

131.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair deceptive act and practice.

132.   Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

133.   Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

134.   Plaintiff and the Proposed Class Members relied to their detriment on the misrepresentations made by Defendant as described above.

135.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have suffered a loss and were injured.  Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

136.   If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

137.   Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

138.   Plaintiff and proposed class members are entitled pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law to recover actual damages, equitable and injunctive relief and attorneys' fees.

**Count V**

**Violation of the Maine Unfair Trade Practices Act**

**(On Behalf of the Maine Class Against the Behr and Home Depot Defendants)**

139.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

140.   The Maine Unfair Trade Practices Act ("MUTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  5 M. R.S.A. § 207.

141.   The Act provides a private right of action for any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and herby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful."  5 M.R.S. § 213.

142.   Plaintiff and proposed class members are persons as defined in 5 M.R.S. § 206.

143.   At all relevant times, Defendants conducted trade or commerce in Maine as defined in 5 M.R.S. § 206(3).

144.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

145.   Defendants engaged in unfair methods of competition by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

146.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading

CLASS ACTION COMPLAINT

within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

147.   Defendants failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

148.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class Members that the DeckOver was defective.

149.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.    Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

150.   Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

151.   Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

152.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have suffered a loss and were injured.  Plaintiff and proposed class members were injured

CLASS ACTION COMPLAINT

because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

153.   If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

154.   Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

155.   Pursuant to the provisions of the Maine Consumer Protection Act, Plaintiff provided a letter to the Behr and Home Depot Defendants with notice of their alleged violations of the MUTPA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices.  If the Defendants do not thereafter correct their business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Maine Consumer Protection Act.

156.   Pursuant to Maine Consumer Protection Act, Plaintiff seeks injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper.

**Count VI**
**Violation of Michigan Consumer Protection Act,**
**Mich. Comp. Laws 445.903**
**(On Behalf of the Michigan Class Against the Behr and Home Depot Defendants)**

157.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

158.   Defendants have violated and continue to violate the Michigan Consumer Protection Act, 445.903 et seq. ("MCPA") which prohibits unlawful, unfair, and fraudulent business acts or practices.

159.   Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the MCPA.  In particular, Defendants manufactured and distributed DeckOver and authorized and marketed its sale to the public even though DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but

34

is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise.

160.    Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive and confuse a reasonable consumer.  As described above, Defendants knowingly misrepresent and conceal material facts related to DeckOver's performance.  Had Defendants not misrepresented and concealed these facts, Plaintiff, proposed class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for them.

161.    Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.      The gravity of harm to Plaintiff and the proposed class members from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.      Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed class; and

c.      Defendants' conduct undermines and violates the stated policies underlying the MCPA —to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

162.    As a direct and proximate result of Defendants' business practices, Plaintiff and proposed class members suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.

163.    Plaintiff and proposed class members are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to Defendants, because of their unfair and deceptive practices, and such other orders as

35

CLASS ACTION COMPLAINT

1    may be necessary to prevent the future use of these practices. Mich. Comp. Laws Ann.

2    § 445.911

3                                        **Count VII**

4    **Violation of Minnesota Uniform Deceptive Trade Practices Act,**
     **Minn. Stat. § 325D.44 and Minnesota Prevention of Consumer Fraud Act,**

5                              **Minn. Stat. § 325F.69**

6
     **(On Behalf of the Minnesota Class Against the Behr and Home Depot**
7                                   **Defendants)**

8           164.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

9           165.   Defendants have violated and continue to violate the Minnesota Uniform

10   Deceptive Trade Practices Act, Minn. Stat. § 325D.44 subd. 1(5), (7), and (13), et

11   seq., ("MUDTPA") the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §

12   325F.69, subd. 1 ("MPCFA") which prohibit unlawful, unfair, and fraudulent business

13   acts or practices.

14          166.   Defendants' acts and practices, as alleged in this complaint, constitute

15   unlawful, unfair, and fraudulent business practices, in violation of the MUDTPA and

16   MPCFA.  In particular, Behr manufactured and distributed DeckOver and authorized

17   and marketed its sale to the public even though DeckOver is not a durable resurfacer

18   and is not capable of providing long-lasting protection for wood and concrete

19   surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading

20   within months of application.  Defendants failed to disclose material facts concerning

21   DeckOver's performance at the point of sale and otherwise.

22          167.   Defendants' acts and practices also constitute fraudulent practices in that

23   they are likely to deceive and confuse a reasonable consumer.  As described above,

24   Defendants knowingly misrepresent and conceal material facts related to DeckOver's

25   performance.  Had Defendants not misrepresented and concealed these facts, Plaintiff,

26   proposed class members, and reasonable consumers would not have purchased

27   DeckOver or would have paid significantly less for them.

28

                                            36

168.   Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.     The gravity of harm to Plaintiff and the proposed class members from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.     Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed class; and

c.     Defendants' conduct undermines and violates the stated policies underlying the MUDTPA and MPCFA—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

169.   As a direct and proximate result of Defendants' business practices, Plaintiff and proposed class members suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.

170.   Plaintiff and proposed class members are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to Defendants, because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices.  *See* Minn. Stat.§ 8.31, subd. 3(a), et seq.

## Count VIII

### Violation of the New Mexico Unfair Trade Practices Act
**(On Behalf of the New Mexico Class Against the Behr and Home Depot Defendants)**

171.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

172.   The New Mexico Unfair Practices Act ("NMUPA") declares unlawful, "[U]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N. M. S. A. 1978, § 57-12-3.

37

173.   Plaintiff and proposed class members are persons as defined in N. M. S. A. 1978, § 57-12-2.

174.   At all relevant times, Defendants conducted trade or commerce in New Mexico as defined in N. M. S. A. 1978, § 57-12-2.

175.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

176.   Defendants engaged in unfair methods of competition by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

177.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

178.   Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

179.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class Members that the DeckOver was defective.

180.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive

CLASS ACTION COMPLAINT

matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

181.    Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

182.    Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

183.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have suffered a loss and were injured.  Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

184.    If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

185.    Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

186.    Plaintiff and proposed class members are entitled pursuant to the New Mexico Consumer Unfair Practices Act to recover actual damages, equitable and injunctive relief and attorney's fees.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Count IX**
**Violation of Ohio Consumers Sales Practice Act,**
**Ohio Revised Code Section §1345.01 et seq.**
**(On Behalf of the Ohio Class Against the Behr and Home Depot Defendants)**

187.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

188.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

189.    This count is brought pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code §§1345.01, et. seq. (the "CSPA").

190.    Plaintiff is a consumer as defined by Ohio Revised Code §1345.01(D).

191.    DeckOver is a good within the meaning of the CSPA.

192.    Defendants are suppliers as defined by Ohio Revised Code §1345.01(C).

193.    Defendants' conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A).

194.    Defendants violated and continue to violate the CSPA by engaging in the following practices prescribed by the following subsections of Ohio Revised Code §1345.02 in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of the DeckOver to the Plaintiff and Proposed Class:

a.    (A) by "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";

b.    (B)(1) by representing that the products have "performance characteristics . . . uses, or benefits that [they] do [not] have";

c.    (B)(2) by representing that the products are "of a particular standard, quality, grade, style [or] prescription" when they are not; and

d.    (B)(4) by representing that the product "is available to the consumer for a reason that does not exist; and

e.    (B)(5) by representing that the products are being "supplied in accordance with a previous representation," when they are not.

40

195.   Pursuant to Ohio Adm. Code 109:4-3-10 (A) (Substantiations of Claims In Advertising), it shall be a deceptive act or practice in connection with a consumer transaction for a supplier to "[M]ake any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact."

196.   In conjunction with the violations of Ohio Revised Code §1345.02 set forth above, Defendants violated Ohio Adm. Code §109:4-3-10 because they misrepresent and conceal material facts about DeckOver, including that it is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

197.   Defendants' representations regarding the durability and protection of DeckOver had the capacity, tendency, or effect of deceiving or misleading consumers.

198.   Also, Defendants represented that DeckOver's durability and protection were of a high standard, quality, and grade that it was not.

199.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when they had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

200.   Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

201.   Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material

CLASS ACTION COMPLAINT

respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

202.    In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class members that the DeckOver was defective.

203.    The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

204.    Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

205.    Defendants' failure to disclose deceives or tends to deceive consumers.

206.    Defendants further violated and continue to violate the CSPA by engaging in the following practices proscribed by Ohio Revised Code §1345.03 in consumer transactions with the Plaintiff and the Proposed Class, which were intended to result in, and did result in, the sale of the DeckOver to Plaintiff and the Proposed Class:

a.    (A) because Defendants engaged and are engaging in "an unconscionable act or practice in connection with a consumer transaction;"

b.    (B)(2) because Defendants "knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which

similar property or services were readily obtainable in similar consumer transactions by like consumers;"

c.    (B)(3) because Defendants "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;" and

d.    (B)(6) because Defendants "knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

207.    Defendants violated the CSPA and Ohio Administrative Code by misrepresenting qualities of DeckOver though its advertisements and product labels when it knew, or should have known, that the representations and advertisements were unsubstantiated, false, unfair, deceptive and/or unconscionable and otherwise have no reasonable basis in fact.

208.    Pursuant to the CSPA, Plaintiff and the Proposed Class are entitled to rescind the consumer transactions, recover damages or other appropriate relief under Rule 23 of the Federal Rules of Civil Procedure.

209.    Defendants had notice that in connection with the sale of the DeckOver in Ohio, it is a false, unfair, deceptive and/or unconscionable act or practice to make misrepresentations. Defendants were further placed on notice that if they did engage in such false, unfair, deceptive and/or unconscionable acts, it would be required to make full restitution and reimburse the purchase price to the Class that purchased the Windows.

210.    As a direct and proximate result of Defendants' violation of Ohio Revised Code §1345.03, Plaintiff and proposed class members have suffered actual damages and were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

211.    Pursuant to Ohio Revised Code §1345.09(A), Plaintiff and the proposed class members are entitled to rescind the consumer transactions or recover actual damages plus an amount not exceeding $5,000 in non-economic damages.

CLASS ACTION COMPLAINT

212.   Pursuant to Ohio Revised Code §1345.09(B), Plaintiff and the proposed class members are entitled to rescind the transactions or recover three times the amount of the Plaintiff's actual economic damages or two hundred dollars, whichever is greater plus an amount not to exceed $5,000 in noneconomic damages or recover damages or other appropriate relief in a class action under Ohio Civil Rule 23.

213.   Pursuant to Ohio Revised Code §1345.09(D), Plaintiff and the Proposed Class seek an order enjoining the above-described wrongful acts and practices of the Defendant and for restitution and disgorgement.

214.   Pursuant to § 1345.09(E), this Complaint will be served upon the Ohio Attorney General, Michael DeWine.

215.   Plaintiff and the Propose Class reserve the right to allege further violations of Ohio's CSPA as Defendants' conduct is ongoing.

## Count X

### Violation of New York General Business Law § 349
### (On Behalf of the New York Class Against the Behr and Home Depot Defendants)

216.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

217.   Plaintiff and proposed class members are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

218.   Each Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

219.   Home Depot is Behr's exclusive distributor of DeckOver, thereby creating a marketing partnership.

220.   Under the New York Deceptive Acts & Practices Statute, "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful.  N.Y. Gen. Bus. § 349.

221.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling

CLASS ACTION COMPLAINT

DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

222.    Defendants had exclusive knowledge of the fact that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

223.    Plaintiff and proposed class members were unaware, and did not have reasonable means of discovering, the material facts that Defendants both misrepresented and failed to disclose.

224.    Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

225.    These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of DeckOver.

226.    As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

227.    Defendants' acts and practices were willful and knowing.

228.    Plaintiff and proposed class members are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble

CLASS ACTION COMPLAINT

damages up to one thousand dollars, and their reasonable costs and attorneys' fees. *See* N.Y. Gen. Bus. § 349(h).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

a.  An order certifying the proposed classes and appointing Plaintiffs' counsel to represent the classes;

b.  An order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

c.  An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

d.  An order enjoining Defendants from their unlawful conduct;

e.  An order awarding Plaintiffs and the classes pre-judgment and post-judgment interest as allowed under the law;

f.  An order awarding Plaintiffs and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.  An order awarding such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.

CLASS ACTION COMPLAINT

Dated:  July 25, 2017

Respectfully submitted,

**KOHN, SWIFT & GRAF, P.C.**

By: */s/ Jonathan Shub*
        Jonathan Shub

        Jonathan Shub (CA Bar # 237708)
        Kevin Laukaitis*
        **KOHN, SWIFT & GRAF, P.C.**
        One South Broad Street
        Suite 2100
        Philadelphia, Pennsylvania 19107
        Ph: (215) 238-1700
        jshub@kohnswift.com
        klaukaitis@kohnswift.com

        Katrina Carroll*
        Ismael T. Salam*
        **Lite DePalma Greenberg LLC**
        211 W. Wacker Drive, Suite 500
        Chicago, Illinois 60606
        Ph: (312) 750-1265
        kcarroll@litedepalma.com
        isalam@litedepalma.com

        *Pro Hac Vice Application forthcoming*

        Attorneys for Plaintiffs and the
        Proposed Class

CLASS ACTION COMPLAINT